IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, AT CLEVELAND

| | | |
|---|---|---|
| ROBERT L. HILL, INDIVIDUALLY AND AS NEXT FRIEND OF JORDAN LEE HILL, A MINOR<br>Plaintiffs, | )<br>)<br>)<br>)<br>) | CIVIL ACTION NO.: **1 : 05 CV 0895**<br><br>JUDGE: _____ **JUDGE OLIVER** |
| vs. | )<br>) | **ORIGINAL COMPLAINT**<br>(JURY TRIAL DEMANDED) |
| BLITZ, U.S.A., INC. AND WAL-MART STORES, INC., a/k/a WAL-MART STORES EAST, INC.<br>Defendant. | )<br>)<br>)<br>)<br>) | **MAG. JUDGE HEMANN** |

COME NOW Plaintiffs, Robert L. Hill, individually and as next friend of Jordan Lee Hill,

a minor, and for complaint against Defendant Blitz, U.S.A., Inc. and Defendant Wal-Mart Stores,

Inc., a/k/a Wal-Mart Stores East, Inc. allege and state:

## PARTIES

1.  Plaintiff Jordan Lee Hill is a citizen and resident of the State of Ohio, County of Crawford,

    residing at 125 Penn Avenue, Bucyrus, Ohio 44820 and was a minor child at the time of the

    incident which is the subject of this action.

2.  Plaintiff Robert L. Hill is a citizen and resident of the State of Ohio, County of Crawford,

    residing at 125 Penn Avenue, Bucyrus, Ohio 44820, and is the natural father and next friend

    of his son, Jordan Lee Hill. Plaintiff Robert L. Hill jointly brings this action with his son,

    Jordan Lee Hill, individually and in his capacity as the natural father, guardian, and next

ORIGINAL COMPLAINT
Page 1

friend of Jordan Lee Hill. who was born on August 25, 1994 and was eight years old on the date the incident occurred which is the subject of this action.

3.      Defendant Blitz, U.S.A., Inc. ("Blitz"), the manufacturer of the subject portable plastic gasoline container, is an Oklahoma corporation, where it also maintains its primary offices. Defendant Blitz transacts business in the State of Ohio and can be served with process by serving its registered agent: CT Corporation System, 1300 E. 9th Street, Cleveland. Ohio 44114.

4.      Defendant Wal-Mart Stores, Inc., a/k/a Wal-Mart Stores East, Inc. ("Wal-Mart"). the distributer and seller of the subject portable plastic gasoline container, is an Arkansas Corporation, which transacts business in the State of Ohio.   Wal-Mart can be served with process by serving its registered agent: CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114.

## VENUE AND JURISDICTION

5.      Subject matter jurisdiction is proper under 28 U. S. C. § 1332 in that diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy as to each Plaintiff and as to each Defendant exceeds, exclusive of costs and interest, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

6.      Plaintiffs are citizens of Crawford County, Ohio.

7.      Defendant Blitz is an Oklahoma corporation whose principal place of business is outside of the State of Ohio.

8.     Defendant Wal-Mart is An Arkansas corporation whose principal place of business is outside of the State of Ohio.

9.     The incident, which is the subject of this complaint, occurred in Bucyrus, Crawford County, State of Ohio.

## FACTS

10.    On June 13, 2003, eight year old Jordan Hill was catastrophically burned over the majority of his body while playing at his home in Bucyrus, Ohio with his friends, Katy McKinney and Travis Armstrong, twelve and ten years old, respectively. The children had gone to Jordan's home to play with his Green Machine and Play Station.

11.    On June 13, 2003, Katy had a lighter and a package of cigarettes with her. She asked Travis and Jordan to go behind a shed located at the Hill's residence to smoke cigarettes. Jordan and Katy went behind the shed, while Travis went inside the house to play with the Play Station.

12.    Katy then inquired about whether there was a gasoline container on the premises stating that she wanted to start a fire. Jordan expressed his concern about using a gas can, but Katy, the oldest of the children, retrieved a gas can from the backyard shed. In doing so, she had to use a stick to reach and unlock the extra latch placed at the top of the shed door for safety by Jordan's father, Bob. Katy then took the container behind the shed, and Jordan followed. The gasoline container was a Blitz two plus gallon can with a pull and pour spout.

13.    While behind the shed, Katy poured gasoline from the container onto the empty cigarette package and used the lighter to ignite the package. Suddenly, the gasoline vapors ignited, and the flame followed the vapor trail back into the container causing the contents of the

container to ignite like a flame thrower. Jordan was sprayed with burning gasoline and engulfed in flames.

14.   The wooden privacy fence, shed, and the wall of flames together created a trap for Jordan, and he was unable to immediately escape. In flames, Jordan finally managed to emerge from behind the shed. With virtually all clothing burned off of or ripped from his body, Jordan ran inside his house to his mother, who desperately rushed him into the shower. Travis called 911 for help.

15.   Smoke emanated from Jordan's young body. The front of his underwear had actually melted into his skin, and the back of his underwear had completely burned off.

16.   Upon arrival at the Hill home, local authorities transported Jordan to Bucyrus Community Hospital. From there, he was immediately flown to St. Vincent's Mercy Children's Hospital. The following day Jordan was transferred to the burn unit at Shriners Hospital in Cincinnati. Jordan remained at Shriners for 58 days during which he underwent numerous excision, debridment, and grafting procedures. Jordan sustained third degree burns to his head, neck, anterior and posterior trunk, buttocks, right arm, right hand, right and left thigh, right and left leg, and right foot, totaling 56% of his body surface. Jordan has continued and will continue to undergo a multitude of surgeries and procedures.

17.   As a direct result of the defective and unreasonably dangerous portable plastic gasoline container manufactured, sold, and distributed by Defendant Blitz, and supplied, sold and distributed by Defendant Wal-Mart, Jordan Hill suffers horrific and permanent injuries, which will plague him physically and mentally for the rest of his life.

ORIGINAL COMPLAINT
Page 4

18.     As a direct and proximate result of Defendant Blitz's acts or omissions in the design,

formulation, production, construction, creation, assembly, testing, manufacture, engineering,

marketing, and sale of the portable gasoline container and of Defendant Wal-Mart's acts or

omissions in the supply and sale of the portable gasoline container, Jordan Hill has suffered

tremendous pain and suffering, physical disabilities, scarring, disfigurement, and emotional

distress. Further, Jordan Hill's earning capacity has been greatly diminished and the Hills

have incurred medical and other related expenses. Jordan Hill's injuries are permanent and

his ability to carry on ordinary activities and to basically enjoy life has been permanently and

adversely affected. Additionally, Plaintiff Robert Hill has suffered financial loss as a result

of medical expenses incurred, loss of support, society, love, companionship, and services all

as a direct and proximate result of the injuries suffered by Jordan Hill.

### COUNT I
### (Defective Design or Formulation - Statutory Liability)

19.     Plaintiffs adopt the allegations of paragraphs 1 - 18 above and incorporate the same where

relevant.

20.     Defendant Blitz designed, developed, produced, created, made, constructed, and/or

assembled the portable gasoline container that caused Jordan Hill's injuries.

21.     The portable gasoline container was defectively designed in that the design did not include

a flame arrester device, which is a necessary safety device that would have prevented this

tragedy. A flame arrester is a piece of metal mesh screen placed in each opening of a

container to prevent the flashback of flames into the can.

22. The efficacy of flame arresters has been known to the manufacturing industry since the early 1970's, and particularly to the manufacturers of portable plastic gasoline containers.

23. Prior to the injuries sustained by Jordan Hill, Defendant Blitz had known for or should have known for years that its gasoline containers are susceptible to flashback i.e. the gasoline vapors ignite and follow the vapor trail back into the can causing the can to explode and/or spew flames and gasoline.

24. In this case, the portable gasoline container unexpectedly sprayed burning gasoline onto Jordan Hill causing him grievous injuries. Had the gasoline container's design included the flame arrester, this injury would not have occurred. Defendant Blitz has made and continues to make a conscious decision to disregard the safety of its consumers in general and of children in particular by not including this well-known and simple safety device in its product.

25. At the time that this product left Defendant Blitz and at all times complained of a practical and technically feasible alternative design or formulation was and still is available that would have prevented the risk of the incident and the severity of the injuries suffered by the Plaintiffs without substantially impairing the usefulness or intended purpose of the product.

26. The nature and magnitude of the foreseeable risks involved with the use of such product as designed far exceeded any benefits associated with its design.

27. Consumers and users, especially children, were not and are not likely to possess the general knowledge of the magnitude of the risks associated with using the gasoline container as designed, nor could they appreciate such risks. On the other hand, Defendant Blitz does

know and is certainly in the best position to know that its gasoline containers as designed pose tremendous and horrific risks to consumers in general and children in particular.

28.    The portable gasoline container manufactured, marketed, sold, and distributed by Defendant Blitz was defective and unreasonably dangerous to users and bystanders, in that Defendant:

   A.    failed to use due care in the design, manufacture, and distribution of the subject portable gasoline container;

   B.    failed to assure that the product design included a flame arrester;

   C.    failed to provide adequate instructions and necessary warnings with the product, after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably unsafe for its intended use;

   D.    failed to provide an adequate and readable warning and /or instruction on the subject gasoline container as to the hazards and/or risks involving gasoline vapors and explosions;

   E.    failed to actively seek information and maintain a library documenting how consumers, users, and bystanders are being burned by gasoline container explosions and rapid ignition of gasoline;

   F.    failed to properly test the gasoline container and prototypes thereof;

   G.    failed to protect foreseeable users of the gasoline container from the dangers present in the use of the container, that the Defendant knew or should have known existed;

   H.    failed to recall and/or repair the product;

   I.    failed to assure that the product design included explosion proofing material;

J.     failed to assure that the product design included an explosion suppression system; and

K.     placed on the market a gasoline container which was unfit for its intended use.

29.    As an actual and proximate result of Defendant Blitz's acts or omissions, the portable gasoline container was in a defective condition, unreasonably dangerous when it left the manufacturer.

30.    The injuries to Jordan Hill and the manner in which they occurred were reasonably foreseeable to Defendant Blitz who had actual knowledge from prior lawsuits that consumers, especially children, were and are being severely and routinely burned when encountering their gasoline containers.

31.    The acts and omissions of Defendant Blitz described hereinabove constitute a flagrant disregard for the safety of those who might be harmed by their gasoline containers, including the Plaintiffs, for which Defendant Blitz is liable in punitive damages in an amount to be determined by the jury.

## COUNT II
### (Negligent Design)

32.    Plaintiffs adopt the allegations of paragraphs 1 - 31 above and incorporate the same where relevant.

33.    Defendant Blitz designed, developed, produced, created, made, constructed, and/or assembled the portable gasoline container that caused Jordan Hill's injuries.

34.    The portable gasoline container was defectively designed in that the design did not include a flame arrester device, which is a necessary safety device that would have prevented this

ORIGINAL COMPLAINT
Page 8

tragedy. A flame arrester is a piece of metal mesh screen placed in the nozzle of the can to prevent the flashback of flames into the can.

35.     The efficacy of flame arresters has been known to the manufacturing industry since the early 1970's, and particularly to the manufacturers of portable plastic gasoline containers.

36.     Prior to the injuries sustained by Jordan Hill, Defendant Blitz had known for or should have known for years that its gasoline containers are susceptible to flashback i.e, the gasoline vapors ignite and follow the vapor trail back into the can causing the can to explode and/or rapidly ignite, spewing flames and gasoline.

37.     In this case, the portable gasoline container unexpectedly sprayed burning gasoline onto Jordan Hill causing him grievous injuries. Had the gasoline container's design included the flame arrester, this injury would not have occurred. Defendant Blitz made a conscious decision to disregard safety and to not include this well-known safety device in its product.

38.     Defendant failed to exercise reasonable care under the circumstances to design a product safe for its intended and reasonably foreseeable uses, thereby creating an unreasonable risk of injury.

39.     The portable gasoline container manufactured, marketed, sold, and distributed by Defendant Blitz was defective and unreasonably dangerous to users and bystanders, in that Defendant:

   A.     failed to use due care in the design, manufacture, and distribution of the subject portable gasoline container;

   B.     failed to assure that the product design included a flame arrester;

C.    failed to provide adequate instructions and necessary warnings with the product, after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably unsafe for its intended use;

D.    failed to provide an adequate and readable warning and /or instruction on the subject gasoline container as to the hazards and/or risks involving gasoline vapors and explosions;

E.    failed to actively seek information and maintain a library documenting how consumers, users, and bystanders are being burned by gasoline container explosions and rapid ignition of gasoline;

F.    failed to properly test the gasoline container and prototypes thereof;

G.    failed to protect foreseeable users of the gasoline container from the dangers present in the use of the container, that the Defendant knew or should have known existed;

H.    failed to recall and/or repair the product;

I.    failed to assure that the product design included explosion proofing material;

J.    failed to assure that the product design included an explosion suppression system; and

K.    placed on the market a gasoline container which was unfit for its intended use.

40.    As an actual and proximate result of Defendant Blitz's negligence, the portable gasoline container was in a defective condition, unreasonably dangerous when it left the manufacturer.

41.    The injuries to Jordan Hill and the manner in which they occurred were reasonably foreseeable to Defendant Blitz who had actual knowledge that consumers, especially

children, were and are being severely and routinely burned when encountering their gasoline containers.

42.     The acts and omissions of Defendant Blitz described herein constitute a flagrant disregard for the safety of those who might be harmed by their gasoline containers, including the Plaintiffs, for which Defendant Blitz is liable in punitive damages in an amount to be determined by a jury.

## COUNT III
### (Inadequate Warning or Instruction)

43.     Plaintiffs adopt the allegations of paragraphs 1 - 42 above and incorporate the same where relevant.

44.     Defendant Blitz designed, developed, produced, created, made, constructed, and/or assembled the portable gasoline container that caused Jordan Hill's injuries.

45.     The portable gasoline container was defective in that it failed to adequately warn consumers and users of the dangers presented by the anticipated use or misuse of their product.

46.     Specifically, the warning label is extremely difficult to read since there is no color contrast between the actual warning and the container. The warning label is stamped into the container itself, which means that both the warning and the background are red. Not only is the red warning visually lost on the red container, but there are no pictures to warn of any danger. The warnings are therefore ineffective and deficient.

47.     As an actual and proximate result of Defendant Blitz's acts or omissions, the portable gasoline container was in a defective condition, unreasonably dangerous when it left the manufacturer.

48.     The injuries to Jordan Hill and the manner in which they occurred were reasonably foreseeable to Defendant Blitz who had actual knowledge that consumers, especially children, were and are being severely and routinely burned when encountering their gasoline containers.

49.     The acts and omissions of Defendant Blitz described hereinabove constitute a flagrant disregard for the safety of those who might be harmed by their gasoline containers, including the Plaintiffs, for which this Defendant is liable in punitive damages in an amount to be determined by the jury.

## COUNT IV
### (Failure to Warn)

50.     Plaintiffs adopt the allegations of paragraphs 1 - 49 above and incorporate the same where relevant.

51.     Defendant Blitz designed, developed, produced, created, made, constructed, and/or assembled the portable gasoline container that caused Jordan Hill's injuries.

52.     Defendant Blitz knew or should have known, in the exercise of reasonable care, of the risk or hazard about which it failed to warn and it failed to take precautions that a reasonable person / manufacturer would take in presenting the product to the public.

53.     Specifically, the warning label is extremely difficult to read since there is no color contrast between the actual warning and the container. The warning label is stamped into the container itself, which means that both the warning and the background are red. Not only is the red warning visually lost on the red container, but there are no pictures to warn of any danger. The warnings are therefore ineffective and deficient.

54.   As an actual and proximate result of Defendant Blitz's acts or omissions. the portable gasoline container was in a defective condition, unreasonably dangerous when it left the manufacturer.

55.   The injuries to Jordan Hill and the manner in which they occurred were reasonably foreseeable to Defendant Blitz who had actual knowledge that consumers. especially children, were and are being severely and routinely burned when encountering their gasoline containers.

56.   The acts and omissions of Defendant Blitz described hereinabove constitute a flagrant disregard for the safety of those who might be harmed by their gasoline containers, including the Plaintiffs, for which this Defendant is liable in punitive damages in an amount to be determined by the jury.

### COUNT V
### (Supplier Liability)

57.   Plaintiffs adopt the allegations of paragraphs 1 - 56 above and incorporate the same where relevant.

58.   Defendant Wal-Mart supplied, distributed, and sold the portable gasoline container that caused Jordan Hill's injuries. The subject gasoline container manufactured by Defendant Blitz was a two plus gallon can with a pull and pour spout, which was purchased by Plaintiff Robert Hill from Defendant Wal-Mart at its store located at 1875 E. Mansfield Street in Bucyrus, Ohio between 2000 and 2001.

59.     Defendant Wal-Mart failed to exercise reasonable care under the circumstances to supply,

        distribute, or sell a product safe for its intended and reasonably foreseeable uses, thereby

        creating an unreasonable risk of injury.

60.     The portable gasoline container supplied, distributed, and sold by Defendant Wal-Mart was

        defective and unreasonably dangerous to users and bystanders, in that Defendant:

        A.      Sold and distributed a gasoline container which it knew, or had reason to believe, was

                defective in its design and unreasonably dangerous;

        B.      Sold and distributed a gasoline container which it knew, or had reason to believe,

                would malfunction;

        C.      Failed to properly test the gasoline container;

        D.      Failed to ensure that the manufacturer and designer properly tested the gasoline

                container;

        E.      Failed to protect foreseeable users of the gasoline container from the dangers

                presented by the use of the container, that the Defendant knew, or had reason to

                believe, or should have known, existed;

        F.      Placed in the marketplace a gasoline container which it knew, or had reason to

                believe, was unfit for its intended use;

        G.      Sold and distributed a gasoline container that it knew, or had reason to believe,

                lacked a flame arrester;

        H.      in failing to provide proper warnings and instructions for safe gasoline container

                usage;

    I.       Sold and distributed a gasoline container that it knew, or had reason to believe, lacked explosion proofing material; and

    J.      Sold and distributed a gasoline container that it knew, or had reason to believe, lacked an explosion suppression system.

61.    As an actual and proximate result of Defendant Wal-Mart's acts or omissions, the portable gasoline container was in a defective condition, unreasonably dangerous.

62.    The injuries to Jordan Hill and the manner in which they occurred were reasonably foreseeable to Defendant Wal-Mart who knew or should have known that consumers, especially children, were and are being severely and routinely burned when encountering these gasoline containers

63.    The acts and omissions of Defendant Wal-Mart described herein constitute a flagrant disregard for the safety of those who might be harmed by their gasoline containers, including the Plaintiffs, for which Defendant Wal-Mart is liable in punitive damages in an amount to be determined by a jury.

## DAMAGES

64.    Plaintiffs adopt the allegations of paragraphs 1-63 above and incorporate the same where relevant.

65.    This suit is brought to recover all damages recoverable under statutory and common law.

66.    As both a producing and proximate result of Defendants' acts, omissions, and/or errors, Plaintiffs have suffered and continue to suffer harm, injury and damages. Plaintiff Jordan Hill's damages include, but are not limited to: temporary total disability, permanent partial

disability, past and future lost wages, physical deformity, physical pain and suffering, emotional distress, scars, itching, increased susceptibility to other ailments, medical treatment and expenses and continuing medical treatment and expenses, loss of consortium, and other continuing damages. Plaintiffs therefore seek recovery for their compensatory damages.

67. Plaintiffs further seek punitive and exemplary damages, since the harm for which Plaintiffs seek compensatory damages is the result of misconduct by Defendants who manifested a flagrant disregard of the safety of persons who might be harmed by its defective product, and Defendants' actions demonstrate malice, aggravated or egregious fraud, oppression, or insult.

68. WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For damages in excess of $75,000.00 sustained by the Hills, including, but not limited to, those injuries set forth above, in an amount to be determined by the trier of fact;

B. For punitive and exemplary damages;

C. For all costs of court; and

D. For further relief as the court may deem just and proper.

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

PATRICK T. MURPHY    by Shahd Anderson with permission
Attorney for Plaintiffs

**Patrick T. Murphy**
ATTORNEY AT LAW
153 Washington Square
Bucyrus, Ohio 44820
Tel:  (419) 562-4989
Fax: (419) 562-5362
Ohio Bar No. 0007722

**Hank Anderson**
Texas Bar No. 1220500
**Valeri Stiers Malone**
Texas Bar No. 24014508
ANDERSON LAW FIRM
4600 Belair
Wichita Falls, Texas 76310
Tel:  (940) 691-7600
Fax: (940) 691-1790

ORIGINAL COMPLAINT
Page 17